UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| MEREDITH | CIVIL ACTION |
|---|---|
| VERSUS | NO: 08-795 |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY | SECTION: "J"(4) |

**ORDER AND REASONS**

The instant claim for insurance benefits is before the Court on summary judgment. The Court previously denied the parties' cross-motions for summary judgment (Rec. Doc. 24), but also ordered that the parties file any desired additional briefings regarding the issues raised in those motions (Rec. Doc. 33). The case is now ripe for decision. Having considered the memoranda of counsel, the record, and the applicable law, the Court finds that the plaintiff's claim should be dismissed with prejudice.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This case arises from a complaint filed by Plaintiff, Curtis Locke Meredith, Jr., against Defendant Louisiana Health Service

and Indemnity Company, doing business as Blue Cross, Blue Shield of Louisiana and/or HMO Louisiana, Inc. (hereinafter "BCBS of Louisiana," or simply "BCBS").  Plaintiff was an employee of Locke Meredith and Associates APLC ("Locke Meredith"), which had in place a group health insurance plan that was administered by BCBS.  Plaintiff had surgery on October 25, 2007 at the Laser Spine Institute ("LSI") in Tampa, Florida.  Mr. Meredith alleges that he was told by a BCBS representative that his surgery would be covered by BCBS, that the surgery did not require pre-approval, and that BCBS would pay 60% of the allowable charge.

BCBS only paid a small portion of the total charges of the surgery.  It took the position that although the claim was covered, because LSI was a nonparticipating provider at the time of the surgery, BCBS was not required under the insurance plan to insure the cost of Mr. Meredith's surgery beyond the allowable charge for the surgery.  Mr. Meredith completed two separate internal appeals with BCBS, both of which BCBS denied.  The insurance plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.,[1] and Plaintiff seeks reimbursement for $51,181.00 in expenses he incurred as a result of the surgery.  Plaintiff alleges that BCBS

---

[1] The parties do not contest that the case is governed by ERISA.

only paid $3,672.00 of the charges billed by LSI.

**THE PARTIES' ARGUMENTS**

Defendant BCBS avers that the administrative record is complete and that it had full discretionary authority to determine benefits, and it seeks a judgment upholding its decision to deny further payment to Plaintiff, Mr. Meredith. Defendant asserts that according to the plan's plain language, benefit payments are based on the "Allowable Charge." If an insured goes outside the network of providers approved by BCBS, Defendant cannot be held liable for any payments above the allowable charge for the medical procedure performed by the nonparticipating (or non-network) provider. Thus, Defendant argues, because LSI was a nonparticipating provider, LSI did not have a contract with BCBS that would have held Plaintiff harmless for any amounts in excess of the allowable. Defendant further argues that each plan has its own terms, conditions, and payment methodologies. Thus, it argues, charges and payments differ according to the terms of each individual patient's plan. It avers that the allowable used in this case was properly based on BCBS of Florida's pricing because Florida was the geographic location where medical services were rendered.

Plaintiff asserts that Defendant picked arbitrary numbers to represent allowable charges and that Defendant's interpretation of the plan directly contradicts the plain meaning of the language in the plan.  He argues that BCBS's legal interpretation was incorrect because BCBS did not give the plan a uniform construction.  Plaintiff avers that before receiving the surgery in question, he contacted BCBS and was told that he did not need pre-approval for the surgery and that BCBS would cover 60% of the allowable.  Plaintiff argues that the payment actually made by BCBS was inappropriate because under the express provisions of the contract, when a member uses a nonparticipating provider, allowable charges must be computed based on the fees of most participating providers in the geographic location where the services are rendered.  He avers that in Florida, where the surgery was performed, the allowable charge for procedure code 63030 is $27,500.00, which is far greater than the Louisiana allowable charge of $977.21.  Plaintiff refers to documentation in the record to show that BCBS of Florida (and other Blue Cross licensees) have paid much higher amounts to LSI for the exact procedure at issue than what BCBS of Louisiana paid in this case on Mr. Meredith's behalf.  Finally, Plaintiff argues that Defendant should be estopped from denying coverage based on its

representative's communication with Plaintiff, and that Defendant should have warned Plaintiff that he would be liable for thousands of dollars in charges.

**DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta,

530 F.3d 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See id. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075.

**B. ERISA Standard of Review**

ERISA applies in this case and is preemptive of all state law insofar as said law relates to an employee benefit plan covered by ERISA. Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Tex., Inc., 164 F.3d 952, 954 (5th Cir. 1999). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Because the plan at issue states that BCBS has discretionary authority to determine benefits,[2] the Court reviews the plan administrator's decision under an abuse of discretion standard. See Anderson v. Cytec Industries, Inc., 619 F.3d 505, 512 (5th Cir. 2010) ("Where a benefits plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' . . . the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits."). The Court first assesses whether the plan

---

[2] See Rec. Doc. 16-2, at 1 ("The Company has full discretionary authority to determine eligibility for Benefits and/or to construe the terms of this Benefit Plan.").

7

administrator made a legally correct decision and, if the decision was incorrect, the Court then determines whether or not the plan administrator abused its discretion. See Crowell v. Shell Oil Co., 541 F.3d 295, 312 (5th Cir. 2008) (stating that if the administrator's determination was legally correct, the inquiry ends, but if not, the court asks whether the determination was an abuse of discretion).

If the Court reaches the second step, it considers possible conflicts of interest in its determination of whether the plan administrator abused its discretion. The Fifth Circuit has previously noted that "[b]ecause Blue Cross is both the plan administrator and the insurer, this conflict 'should be weighed as a factor in determining whether there is an abuse of discretion.'" Lafleur v. La. Health Serv. and Indem. Co., 563 F.3d 148, 160 n.27 (5th Cir. 2009). The weight of this factor depends upon the facts of the case. Id; see also Welch v. HMO Louisiana/Blue Cross, 2009 WL 3401046, at *1 (E.D. La. Oct. 20, 2009). Because of this conflict of interest, BCBS's decision need not be given full deference. See Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001).

**C. BCBS's Plan Interpretation and Decision**

This case is chiefly a dispute about whether BCBS used as an

improper allowable charge to calculate its payment to Mr. Meredith.  To determine whether BCBS's interpretation of the plan and the resultant allowable used was legally correct, the Court looks to "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." Crowell, 541 F.3d at 312.  "[W]hether the administrator's interpretation is consistent with a fair reading of the plan" is the most important of these three factors. Id. at 313.  Thus, the Court begins its analysis with whether the allowable charge that BCBS used is consistent with a fair reading of the plan.

It is not disputed that LSI was a nonparticipating provider.  The plan states, "The Company establishes an Allowable Charge for Covered Services provided by Nonparticipating Providers that is based on the negotiated fee that has been accepted by Participating Providers."  Rec. Doc. 16-1, at 2.  Therefore, BCBS's interpretation of the plan is fair to the extent that BCBS used an allowable charge that was "based on" the negotiated fee that participating providers have accepted.  The plan does not define how this nonparticipating allowable is calculated, but

9

simply states that it is "based on" participating provider fees. The plan goes on to provide a caveat that a "[m]ember may pay significant costs when he uses a Nonparticipating Provider. This is because the amount that some Providers charge for a Covered Service may be higher than the negotiated fee that has been accepted by Preferred and Participating Providers." Id. Therefore, under the second Crowell factor, it is fair to read the plan as permitting a nonparticipating allowable that leads to a lower benefit payment than that applicable to services provided by participating providers, especially where the plan does not require the administrator to base its allowable calculation on any particular formula.

Plaintiff's main argument is that under the plan, BCBS of Louisiana must set the allowable charge at a level comparable to that established by the BCBS licensee in Florida—the geographic area where the services were obtained. Plaintiff cites a statement from the plan: "When a Member receives Covered Services from a Nonparticipating Provider, the Company pays its Coinsurance percentage of the *Allowable Charge that most Participating Providers have agreed to accept for the* **service in the geographic location where it was obtained**." Rec. Doc. 16-1, at 3 (emphasis added). The Court notes that this statement is

located within "Scenario 3," which is an example "for illustration purposes and may not be a true reflection of the member's actual deductible and coinsurance amounts. The member should refer to his schedule of benefits." Rec. Doc. 16-1, at 2 (emphasis removed from original).

Even assuming that "Scenario 3" is binding upon BCBS, this does make BCBS's plan interpretation unfair or unreasonable. Citing the language in Scenario 3, Plaintiff argues that BCBS of Louisiana was required to set the allowable charge at a level comparable to that established by the BCBS licensee in Florida. There is evidence in the record that Defendant did just that. There is a letter that is BCBS of Louisiana's statement to Plaintiff that it contacted the Legal Affairs Division of BCBS of Florida and verified that the allowable amounts submitted were correct. Rec. Doc. 27-1, at 2. That first letter references a second letter, which originated with BCBS of Florida. Said letter (the "Letter") states that LSI is a nonparticipating provider and that BCBS of Florida priced the claims at issue according to standard nonparticipating rates. Rec. Doc. 27-1, at 3. The Letter then describes that the allowance was set at a certain percentage of the Medicare allowable. Therefore, the Letter is an assertion by BCBS of Florida that it priced the

Plaintiff's coverage claim using standard nonparticipating provider rates. Plaintiff points to no contrary evidence in the administrative record. Therefore, based on the Letter, the Court concludes that BCBS of Louisiana fairly interpreted the plan in using an allowable based on "standard non-participating provider rates" in Florida. Id.[3]

Plaintiff's argument to the contrary boils down to a query of how a properly calculated allowable could result in reimbursement of only $3,672.00 of $54,853.00 in medical charges for a surgery that Defendant agrees was a covered service. The legal insufficiency of this approach is that the plan under review does not impose a duty on BCBS to show any more than it has regarding its calculation of the allowable charge. The plan explains that the allowable is calculated as the result of *negotiations* to arrive at similar allowables for participating providers. See Rec. Doc. 16-1, at 2 ("The Company establishes an Allowable Charge for Covered Services provided by Nonparticipating Providers that is *based on the negotiated fee that has been accepted by Participating Providers*.") (emphasis added). The plan does not state that an insured such as

---

[3] Although not necessary to reach a decision, the Court notes that BCBS of Florida indicated that its nonparticipating provider allowance is set at 110% of the allowable that Medicare uses. Rec. Doc. 27-1, at 3.

Plaintiff is entitled to see details of the negotiations or calculations that establish an allowable charge for a particular surgical procedure by a particular healthcare provider. The plan's terms give BCBS full discretionary authority to construe the plan and do not bind BCBS to negotiate for or calculate allowables in any particular manner.

Moving to the first <u>Crowell</u> factor, Plaintiff attempts to show that the plan administrator has not given the plan a uniform construction. Indeed, Plaintiff has submitted evidence that patients at LSI who underwent the surgical procedure at issue benefitted from a much higher allowable charge used by BCBS than the charge applied to Plaintiff's coverage claim. For example, one BCBS of Florida payment register shows payment in full of costs ($27,500) associated with procedure code number 63030, which identifies the procedure Plaintiff underwent.[4] Rec. Doc. 9-5, at 9.[5] Additionally, a "provider voucher" (Rec. Doc. 9-5,

---

[4] Procedure code 63030 indicates the procedure provided to Plaintiff. Plaintiff asserts as much and Defendant not contest this assertion.

[5] The cited record document, and some others in this order, were filed with a motion that the Court denied. However, the Court notes the following: On March 3, 2009, Defendant moved for leave to file the administrative record under seal. Rec. Doc. 7. The Magistrate Judge denied that motion, reasoning that there was no reason to file the entire administrative record into the court record at the time. Rec. Doc. 8. Thereafter, Defendant filed an apparently identical motion on August 6, 2009 (Rec. Doc. 9), this time in connection with its motion for summary judgment, which was filed the same date (Rec. Doc. 10). Once again, the Magistrate Judge denied the motion. Rec. Doc. 14. He stated that Defendant wanted to "dump the entire administrative

13

at 11) that Defendant suggests (Rec. Doc. 12, at 3) refers to claims by members of BCBS of Michigan plans shows that the "allowed amount" for procedure 63030 was equivalent to the "approved to pay" amount.[6]  Plaintiff argues that these documents show that BCBS licensees in the geographic areas where services were performed paid out much higher amounts for the type of surgery at issue than the payment amount Plaintiff received from BCBS of Louisiana.  Plaintiff points to another document to assert that although the charges applicable to procedure 63030 in Plaintiff's case were $27,500.00, BCBS paid only $859.94 for that procedure code.  Rec. Doc. 9-6, at 14.  However, as BCBS persuasively argues, every plan is different.  The nonparticipating allowable calculated under one plan is different from the allowable calculated under the next plan.  Thus, that BCBS used different allowable charges for different patients for the same procedure does not mean that BCBS has non-uniformly

---

record" into the court record, which amounted to "lazy lawyering."  Id.  The Magistrate Judge permitted the parties until November 18, 2009 to supplement their cross-motions for summary judgment with copies of relevant documents. Id.  The parties did so (Rec. Docs. 15-17), but their supplemental filings are not sequentially bates-paginated, making reference to the appropriate portions of those record documents difficult.  Thus, the Court's citations are to record documents deemed properly before the Court.

[6] The Court's discussion here revolves around documents of poor image quality.  However, the Court draws from Defendant's interpretation (Rec. Doc. 12, at 3) of their tiny print to the extent that said interpretation is, if anything, beneficial to Plaintiff's case.  In essence, the Court treats said interpretation as undisputed fact.

interpreted the *plan at issue*. Namely, Plaintiff does not cite any evidence that the other patients who underwent this type of surgery at LSI were insured under the plan at issue, which was available to Locke Meredith employees such as Plaintiff.

Under the three <u>Crowell</u> factors, the Court finds that BCBS's legal interpretation of the plan at issue was correct. Specifically, under the first factor, there is no evidence that the plan administrator has not given the plan a uniform construction. Under the second factor, the plan administrator's interpretation is consistent with a fair reading of the plan. The third factor addresses any unanticipated costs resulting from different plan interpretations. However, because there have been no differing interpretations shown, this third factor has no applicability in this case. Because BCBS's plan interpretation was correct, the Court does not reach Plaintiff's abuse-of-discretion argument.

Nor is there sufficient evidence to invoke the doctrine of ERISA estoppel. Under that doctrine, "the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." <u>Mello v. Sara Lee Corp.</u>, 431 F.3d 440, 444-45 (5th Cir. 2005). Accepting as true that a BCBS

representative told Plaintiff he was covered for the surgery, this was not an assertion by BCBS as to the *amount* for which he would be covered.  If there was evidence that a BCBS representative told Plaintiff that the allowable would be larger than it actually was, this would likely change the outcome.  But where the plan itself states, "The Member may pay significant costs when he uses a Nonparticipating Provider" (Rec. Doc. 16-1, at 2), it was not reasonable for Plaintiff to assume that he would be covered for the bulk of the costs of the procedure.

## CONCLUSION

At most, the plan's plain terms only required BCBS of Louisiana to use an allowable based on rates used by BCBS of Florida because the procedure occurred in Florida.  Defendant has submitted evidence—which Plaintiff has not rebutted—that BCBS of Louisiana based its allowable on BCBS of Florida pricing that used standard nonparticipating rates.  Plaintiff has pointed to no other plan language constraining BCBS to calculate a nonparticipating allowable in any particular manner.  BCBS of Louisiana correctly interpreted the plan at issue in making its payment decision on Mr. Meredith's claim.  Accordingly,

**IT IS ORDERED** that the claim of Plaintiff, Curtis Locke Meredith, Jr., for damages in this matter is hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 1st day of March, 2012.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE